UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                                    Chapter 13

Liza Vulaj Webster,                                       Case Number 17-43099

    Debtor.                                               Hon. Mark A. Randon
_____/

## OPINION AND ORDER REGARDING VALUATION METHODOLOGY

**I.    INTRODUCTION**

A debtor's Chapter 13 plan cannot be confirmed unless it proposes to pay creditors at least what they would receive in a Chapter 7. In most instances, a simple mathematical calculation of a debtor's non-exempt equity (from the values, liens, and exemptions listed on the schedules)–less administrative expenses and costs–suffices. This is an atypical scenario: the Court must determine the proper valuation methodology for Debtor's interest in a hair salon for purposes of her Chapter 13 liquidation analysis.

Debtor says the proper valuation methodology is the business's non-going concern liquidation value of $29,086.98; Creditors urge the going concern fair market value of $239,000.00.[1] The Court adopts a third methodology. After the scheduled evidentiary hearing, the Court will determine the business's going concern *forced sale value*, because: (1) Debtor's plan of reorganization is premised on the business's viability as a going

---

[1] The valuation matters! Estimating a 20 percent reduction for administrative expenses and costs, at $29,086.98, plan payments would be an additional $387.83 for 60 months; at $239,000.00, the additional amount would be $3,186.67 per month.

1

concern and proposes to use at least a portion of its net revenue to fund the plan; (2) a hypothetical Chapter 7 trustee would likely obtain approval to operate the viable business for a limited period to obtain a quick sale, where the going concern value greatly exceeds its non-going concern liquidation value; and (3) a hypothetical Chapter 7 trustee would not have time to obtain a fair market value price.

**II.     BACKGROUND**

Debtor owns C.D. Kessler Corporation, a Michigan business now operating as "Mane Connection" hair salon in Farmington Hills ("the Business"). Debtor also works as a hair stylist at the salon. Creditors are the former owners of the Business. Debtor filed Chapter 13 on March 6, 2017. Her Second Amended Schedule I indicates that her sole source of income derives from the Business.

Pre-petition, Creditors sued Debtor in state court over an alleged breach of the Business Purchase Agreement. Related to that litigation, Debtor obtained a detailed written valuation from Michigan Business Advisors ("MBA"). Using the income approach valuation methodology, MBA concluded that the fair market value of the Business as a going concern–discounted 6% for lack of marketability–is $239,000.00. MBA also estimated the non-going concern liquidation value of the Business (i.e., its cash and equipment minus its liabilities)–discounted 11% for lack of marketability–is $29,086.98.

Debtor and Creditors disagree as to the proper valuation methodology for the Business as it relates to section 1325(a)(4). Not surprisingly, Debtor requests the Court

use the non-going concern liquidation value; Creditors ask for the going concern fair market value. The ultimate value of the Business is critical to the feasibility of Debtor's Chapter 13 plan of reorganization.

### III. APPLICABLE LAW AND ANALYSIS

Under 11 U.S.C. § 1325(a)(4):

> the court shall confirm a plan if . . . the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

In determining value, the Court must contemplate a hypothetical Chapter 7 liquidation conducted on the effective date of the plan. *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) (citing *In re Sierra-Cal*, 210 B.R. 168, 171-72 (Bankr. E.D. Cal. 1997)). "The hypothetical liquidation entails a considerable degree of speculation about a situation that will not occur unless the case is actually converted to a chapter 7." *In re Lason, Inc.*, 300 B.R. at 233 (quoting *In re Sierra-Cal*, 210 B.R. at 171-72). Thus, a court "need only make a well-reasoned estimate of the liquidation value that is supported by the evidence on the record." *In re W.R. Grace & Co.*, 475 B.R. 34, 142 (D. Del. 2012).

Although 11 U.S.C. § 704(a)(1) requires a Chapter 7 trustee to "collect and reduce to money . . . property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest[,]" section 721 allows the trustee to "operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." 11 U.S.C. §

3

721.  "The continued operation of a bankrupt's business is a matter within the discretion of the court." *In re Richter*, 40 F. Supp. 758, 759 (S.D.N.Y. 1941).

Read together, sections 704 and 721 recognize that, in the context of a business, the sale of the whole may well yield more than the sale of its constituent parts.  The Code, therefore, allows a Chapter 7 trustee to at least attempt to sell a viable business as a going concern.  Section 326 further provides an incentive for Chapter 7 trustees to maximize the assets of the estate by allowing compensation "upon all moneys disbursed or turned over in the case[.]" 11 U.S.C. § 326(a).

But a Chapter 7 trustee must also close cases as quickly as is practicable, and obtaining a less than fair market value price for a going concern liquidation is often a reasonable–if not expected–outcome.  Chapter 7 trustees are advised to operate a business for the shortest practical period, and either "close the case, liquidate the business, or convert the case to chapter 11 within a reasonable time[.]"[2]  This "need for speed" reduces the time for trustee marketing, prospective buyer due diligence, and often results in an appreciably lower sale price.  –particularly when the property is a business.

Here, the Court finds it unlikely that a hypothetical Chapter 7 trustee would engage in the piecemeal sale of the Business's assets for $29,086.98.  According to MBA's valuation report, the salon has been in operation for more than 30 years, and its five-year

---

[2]U.S. Department of Justice Executive Office for United States Trustees, Handbook for Chapter 7 Trustees 4-30 (2012), *available at* https://www.justice.gov/ust/file/handbook_for_chapter_7_trustees.pdf.

4

average gross income is $663,387.00. The more likely trustee approach would be to obtain a quick sale of the Business–as a going concern–through a forced sale (e.g., an auction).

The United States Supreme Court has recognized that forced sales do not enjoy the same market conditions as a sales to obtain "fair market value." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 538 (1994). "Everything else being equal, the only difference between a forced sale and an ordinary sale . . . is the hurry-up nature of the former." *In re Economy Lodging Sys. Inc.*, 205 B.R. 862, 865 (Bankr. N.D. Ohio 1997). Forced sale values are, therefore, "simply *worth less*." *BFP*, 511 U.S. at 539 (emphasis in original).

Debtor has indicated that the Business is viable as a going concern; her proposed Chapter 13 plan is funded, in part, through net business revenue. In a Chapter 7 liquidation, a hypothetical trustee would likely operate the Business and sell it as a going concern through a forced sale.

## IV. CONCLUSION

The Court will determine the forced sale value of the Business following the December 14, 2017, evidentiary hearing.

**IT IS ORDERED**.

**Signed on December 01, 2017**



/s/ Mark A. Randon

Mark A. Randon
United States Bankruptcy Judge